IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADRIAN GUTIERREZ MARTINEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>LARRY W. KAHL, DON WHITMIRE, KRIS BOE SIMMONS, JUVET CHE, Dr. MD; DAVID MITCHELL, Dr. Ph.D.; AMANDA HOLMGREEN, Dr. Ph.D.; CATHERING ANDELA-RUTH, APRN; ROCHELLE LOSING, APRN; and PATRICIA TRUE, LIMHP-CDC,[1]<br><br>    Defendants. | 8:22CV445<br><br>MEMORANDUM AND ORDER |

Plaintiff Adrian Gutierrez Martinez filed his Complaint, Filing No. 1, on December 30, 2022, and was given leave to proceed in forma pauperis, Filing No. 6. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). Before conducting this review, the Court must first address the various amended and supplemental complaints and motions filed by Plaintiff in order to ascertain Plaintiff's operative pleadings.

## I. OPERATIVE PLEADINGS AND PENDING MOTIONS

Plaintiff's original Complaint consists of the six-page Pro Se 15 Form Complaint for Violation of Civil Rights (Non-Prisoner) and a seven-page handwritten attachment detailing his claims against the six Defendants named in the caption above. Filing No. 1. On January 9, 2023, Plaintiff filed what the Court docketed as a Supplement

---

[1] The Court has updated the caption to include parties Plaintiff names as defendants in his operative pleading. See Section I, infra.

containing three exhibits, Exhibits A, B, and C, which Plaintiff referenced in his Complaint. Filing No. 7; *see also* Filing No. 1 at 9–11.

Subsequently, on March 2, 2023, Plaintiff filed a handwritten "Amended Civil Complaint," Filing No. 8, suing the same Defendants listed in the Complaint and substantially repeating the allegations contained in the Complaint's handwritten attachment and again referencing Exhibits A, B, and C. *Compare* Filing No. 1 at 7–12 *with* Filing No. 8. On March 16, 2023, Plaintiff filed a "Motion to Incorporate Filed Exhibits" asking the Court to incorporate the separately filed Exhibits A, B, and C into the Amended Civil Complaint. Filing No. 9. Plaintiff then filed a duplicate of this same motion on March 23, 2023. Filing No. 10.

On March 31, 2023, Plaintiff filed a Supplemental Complaint, Filing No. 11 (hereinafter "First Supplemental Complaint"), in which he added five more defendants—Catherine Andela-Ruth, Rochelle Losing, Patricia True, Marsha Schwartz, and Kim Ellenberger—and alleged the same claims from his Amended Civil Complaint against these new defendants. *Compare* Filing No. 8 *with* Filing No. 11. Later, on May 11, 2023, Plaintiff filed two additional Supplemental Complaints, the first of which consists of the Pro Se 15 Form Complaint for Violation of Civil Rights (Non-Prisoner), Filing No. 14 (hereinafter "Second Supplemental Complaint"), and the other being a duplicate of the First Supplemental Complaint with some additional highlighting and the attachment of Exhibits A, B, and C, Filing No. 15 (hereinafter "Third Supplemental Complaint"). The Second and Third Supplemental Complaints again name the same five additional defendants listed in Plaintiff's First Supplemental Complaint.

Finally, on July 17, 2023, Plaintiff filed a "Motion for Voluntary Dismissal" asking the Court to dismiss Marsha Schwartz and Kim Ellenburger[2] as defendants to this action. Filing No. 18.

After careful review of Plaintiff's pleadings, the Court determines that, for purposes of this initial review, the operative pleading consists of the Amended Civil Complaint, Filing No. 8, the Second Supplemental Complaint, Filing No. 14, and the Third Supplemental Complaint, Filing No. 15, which the Court will collectively refer to as the "Amended Complaint." The Amended Complaint includes Exhibits A, B, and C, which are attached to the Third Supplemental Complaint. See Filing No. 15-1; Filing No. 15-2; Filing No. 15-3. Accordingly, the Court denies Plaintiff's motions to incorporate the previously filed exhibits in his January 9, 2023, Supplement, Filing No. 7, as moot. The Court will grant Plaintiff's motion to dismiss Marsha Schwartz and Kim Ellenburger, and neither will be considered parties to this action. With the operative pleadings and relevant parties defined, the Court now reviews the Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff is confined in the Norfolk Regional Center ("NRC") pursuant to an April 26, 2018, order of the Douglas County Board of Mental Health ("the Board") committing Plaintiff to the custody of the Nebraska Department of Health and Human Services ("NDHHS") pursuant to the Nebraska Sex Offender Commitment Act ("SOCA"), Neb. Rev. Stat. §§ 71-1201–71-1226. Filing No. 8 at 1; Filing No. 15-1 at 3–5. Plaintiff brings this action under 42 U.S.C. § 1983 against the following NDHHS and/or NRC officials

---

[2] Plaintiff refers to this party as both "Kim Ellenberger" and "Kim Ellenburger." See Filing No. 11 at 2; Filing No. 14 at 3; Filing No. 18.

and employees in their official and individual capacities—Larry W. Kahl, Chief Operating Officer of NDHHS; Don Whitmire, Hospital Administrator; Kris Boe Simmons, Sex Offender Program Manager; Dr. Juvet N. Che, M.D., Staff Psychiatrist and Clinical Director; Dr. David Mitchell, Ph.D., Director of Psychology; Dr. Amanda Holmgren, Ph.D., Contracted Clinical Psychologist; Catherine Andela-Ruth, APRN, and Rochelle Losing, APRN, both psychiatric practitioners at the NRC; and Patricia True, LIMHP-CDC, a sex therapist and group facilitator. Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights against Defendants.

Plaintiff alleges the Board found him to be a dangerous sex offender based on "a primary diagnosis of exhibitionism for committing [four] past instances of lewd conduct and indecent exposure" and ordered "inpatient commitment . . . aimed at specifically targeting and treating exhibitionistic behaviors." Filing No. 8 at 3; *see* Filing No. 15-1 at 3–5. Plaintiff was transferred to the NRC on April 27, 2018, and was evaluated by Dr. Jean A. Laing, Ph.D, a clinical psychologist, "who correctly determined that the Plaintiff did not meet the statutory criteria for commitment as a dangerous sex offender under the [SOCA]." Filing No. 8 at 3. Plaintiff further alleges that his June 28, 2018, NRC Comprehensive Treatment Plan Update ("CTP Update") identifies Plaintiff's "believed" reason for admission as a 1988 Texas first degree forcible sexual assault conviction, but Defendants admit that no such conviction existed and, in the absence of the sexual assault conviction, Plaintiff's other Nebraska offenses of lewd conduct and indecent exposure "do not meet the legal qualifying criteria for commitment under the [SOCA]." *Id*. at 4; *see also* Filing No. 15-2 at 6–7. The CTP Update indicates Plaintiff "has two convictions for Sex Offender Registration Act violations that resulted in prison

4

sentences," "three earlier Registry violations in Nebraska . . . were dismissed," and Plaintiff "denies violating the Sex Offender Registration Act [as] he believes this statute does not apply to him." Filing No. 15-2 at 9–10.

Plaintiff claims that, since his admission to the NRC, Defendants have knowingly and in bad faith denied and failed to provide Plaintiff "sex offender specific treatment designed to target and treat exhibitionistic behaviors" as required by the Board's order of commitment and that such treatment is not available at the NRC. Filing No. 8 at 4; *see also Id*. at 5–6; Filing No. 14 at 4–5; Filing No. 15 at 2–4. Plaintiff alleges "[t]hat except for sexually assaultive behavior treatments, the Defendants have a policy and practice of not providing sex offender specific treatment" for exhibitionistic behaviors. Filing No. 8 at 5. Plaintiff alleges Defendants' failure to treat Plaintiff denies him "a realistic opportunity to be cured or to improve his mental condition and be released," *Id*. at 4, and constitutes "cruel and unusual punishment and a violation of due process of law," *Id*. at 6.

As relief, Plaintiff seeks damages of $100,000 per individual defendant and an injunction ordering Defendants "to provide adequate sex offender specific treatment to target and treat exhibitionistic behaviors as ordered by the [Board] or release the Plaintiff." Filing No. 8 at 6; *see also* Filing No. 14 at 5; Filing No. 15 at 4.

### III. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that

5

fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-70 (2007); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (quoting Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted).

## IV. DISCUSSION

Liberally construed, Plaintiff alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). For the reasons that follow, the Court finds Plaintiff's Amended Complaint fails to allege a plausible § 1983 claim upon which relief may be granted.

6

**A. Sovereign Immunity**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 which seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff sues the Defendant NDHHS and NRC officials and employees in both their individual and official capacities. As discussed above, the Eleventh Amendment bars monetary damages claims against the state, its instrumentalities, and state employees sued in their official capacities. All Defendants are alleged to be state employees of the NDHHS, Filing No. 8 at 2, and, as such, enjoy sovereign immunity for damages claims made against them in their official capacities absent a waiver of immunity by the state or an override of immunity by Congress. There is no indication that Nebraska waived or Congress overrode immunity here. Therefore, Plaintiff's claims for monetary damages against Defendants in their official capacities must be dismissed.

Sovereign immunity does not bar Plaintiff's claims for prospective injunctive relief against Defendants in their official capacities nor his claims for monetary damages

against Defendants in their individual capacities. The Court, therefore, will analyze Plaintiff's constitutional claims to determine whether the Amended Complaint states a plausible claim for relief against Defendants.

## B. Claims Related to Legality of or Release from Confinement

Plaintiff's Amended Complaint includes allegations suggesting that his commitment to the NRC is invalid because he does not meet the criteria for commitment under the SOCA. Filing No. 8 at 3–5. Plaintiff also requests relief in the form of release from the NRC. Id. at 6; Filing No. 15 at 4. However, such claims are barred by the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court concluded that a state prisoner's claims are not cognizable under § 1983 when the resolution of such a claim would necessarily call into question the validity of the outstanding criminal conviction or sentence. Heck, 512 U.S. at 486–87. "Courts have extended this principle—known as the Heck favorable-termination rule—to circumstances such as this where the plaintiff is in custody pursuant to a civil commitment order, rather than a prison sentence." Patten v. Schultz, No. 19-CV-1210 (SRN/ECW), 2022 WL 4803071, at *4 (D. Minn. Oct. 3, 2022) (citing Wei Shi v. Knight, Civil No. 12-2411 (PJS/JJK), 2012 WL 6652925, at *1 (D. Minn. Nov. 2, 2012) ("[T]he rule . . . reiterated in Heck, is fully applicable to state detainees who are confined by reason of a civil commitment order . . . .")); see also Thomas v. Eschen, 928 F.3d 709 (8th Cir. 2019) (affirming dismissal of civilly committed detainee's § 1983 wrongful commitment claims as Heck-barred); Carter v. Bickhaus, 142 Fed.App'x 937, 938 (8th Cir. 2005) (unpublished) (affirming dismissal of civilly committed detainee's claims for damages and injunctive relief as Heck-barred, and holding he could not seek release as

method of relief under §1983, but instead had to seek release in habeas corpus petition after he exhausted his state remedies).

Thus, to the extent Plaintiff brings claims premised on the invalidity of his commitment and for release from his confinement, such claims are precluded until Plaintiff's commitment has been invalidated through another procedural mechanism, such as habeas corpus.[3] The Court, therefore, dismisses Plaintiff's claims challenging the validity of his commitment and for release without prejudice as *Heck*-barred. *Gautreaux v. Sanders*, 395 F. App'x 311, 312-13 (8th Cir. 2010) (per curiam) (modifying judgment of dismissal under *Heck* to be without prejudice so that plaintiff can refile if he later satisfies *Heck* favorable-termination requirement).

**C. Eighth and Fourteenth Amendment Claims**

Liberally construed, Plaintiff claims that his civil commitment without "sex offender specific treatment designed to target and treat exhibitionistic behaviors," Filing No. 8 at 4, constitutes "cruel and unusual punishment and a violation of due process of law," *Id*. at 6, in violation of the Eighth and Fourteenth Amendments.

The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual punishment, and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Baze v. Rees*, 553 U.S. 35, 47 (2008). "However, because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). "The rights of

---

[3] Plaintiff has a habeas corpus petition pending in this Court challenging his commitment, which is currently under the Court's consideration. *See Martinez v. Whitmire*, 8:20-cv-00271-JFB-PRSE; 8:20-cv-00272-JFB-PRSE (consolidated cases).

9

patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Singleton v. Cecil,* 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (citing *County of Sacramento v. Lewis,* 523 U.S. 833 (1998)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Id.* (internal quotations and citations omitted).

"[A] state may create such a liberty interest protected under the Fourteenth Amendment by regulations, statutes, or court orders 'mandatory in character.'" *Kulak v. City of New York*, 88 F.3d 63, 73 (2d Cir. 1996) (quoting *Washington v. Harper,* 494 U.S. 210, 221 (1990)). Importantly, however, these state-created liberty interests are only "entitled to the *procedural* protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (emphasis added). "A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998). Plaintiff does not claim that he has been denied procedural due process.

In *Youngberg v. Romeo,* 457 U.S. 307 (1982), the Supreme Court considered "for the first time the substantive rights of involuntarily committed mentally retarded persons

10

under the Fourteenth Amendment to the Constitution." *Id.* at 314. The Court concluded that committed individuals "enjoy[] constitutionally protected [liberty] interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324. "In determining whether the State has met its obligations in these respects, decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.*[4] Essentially, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," *id.* at 321–22, but constraints on their liberty are permissible, *id.* at 320.

The United States Court of Appeals for the Eighth Circuit has specifically "held that although 'the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (alteration in original; quoting *Elizabeth M. v. Montenez,* 458 F.3d 779, 788 (8th Cir. 2006)). In *Strutton*, a civilly committed sex offender brought a civil rights action challenging the adequacy of his treatment after budget cuts resulted in the temporary elimination of psychoeducational classes and cutbacks for process group

---

[4] "Romeo, the civilly committed resident in *Youngberg,* was a thirty-three-year-old man with the mental capacity of an eighteen-month-old child. He was not committed because he posed any particular danger to the community but because of his severe retardation. Romeo had sustained injuries numerous times during his commitment, some self-inflicted and some from residents reacting to his aggressive behavior. To prevent Romeo from harming himself or other residents, he occasionally had been restrained with soft arm shackles. Romeo['s guardian] argued that training programs aimed at his self-control and interaction problems would have lessened the need for these restraints." *Bailey v. Gardebring*, 940 F.2d 1150, 1154 (8th Cir. 1991) (distinguishing *Youngberg* and holding that a dangerous psychopath, civilly committed for purposes of safekeeping, did not have a constitutional right to psychiatric treatment to overcome a "sexual offender condition").

11

sessions. The Eighth Circuit agreed with the district court that *Youngberg*'s "professional judgment" standard did not apply in this situation—because Strutton did "not have a fundamental due process right to sex offender treatment"—and that the applicable standard was whether the challenged state action was "so arbitrary or egregious as to shock the conscience." *Id*. at 557–58. The Court explained:

> Strutton's due process claim originates from the state statutory mandate to provide for Strutton's confinement "for control, care and treatment until such time as [his] mental abnormality has so changed that [he] is safe to be at large." Mo.Rev.Stat. § 632.495(2). We remain cautious not to turn every alleged state law violation into a constitutional claim. Only in the rare situation when the state action is "truly egregious and extraordinary" will a substantive due process claim arise. See *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104–05 (8th Cir. 1992). This is why the district court properly analyzed Strutton's claims to determine whether the state action of eliminating the psychoeducational classes and modifying the process groups was so arbitrary or egregious as to shock the conscience. See *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and *Palko v. Connecticut,* 302 U.S. 319, 325–326, 58 S.Ct. 149, 82 L.Ed. 288 (1937))).

*Id*.

More recently, in *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017) ("*Karsjens I*"), the Court of Appeals reviewed a § 1983 class-action that was brought by civilly committed sex offenders who claimed their substantive due process rights were violated by Minnesota's Civil Commitment and Treatment Act and by the actions and practices of the managers of the Minnesota Sex Offender Program (MSOP). The district court had determined that the Act was unconstitutional as applied for six reasons:

> (1) Defendants do not conduct periodic independent risk assessments or otherwise evaluate whether an individual continues to meet the initial commitment criteria or the discharge criteria if an individual does not file a

> petition; (2) those risk assessments that have been performed have not all been performed in a constitutional manner; (3) individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced their risk; (4) discharge procedures are not working properly at the MSOP; (5) although section 253D [of the Minnesota act] expressly allows the referral of committed individuals to less restrictive alternatives, this is not occurring in practice because there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment; and (6) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention.

Id. at 402–03. The Court of Appeals ruled that the district court had applied an incorrect standard in considering the class plaintiffs' as-applied substantive due process claims, stating:

> When it considered the proper standard to apply, the district court stated substantive due process protected against two types of government action: action that shocks the conscience or action that interferes with rights implicit in the concept of ordered liberty. The district court then proceeded to discuss how the state defendants' actions interfered with the class plaintiffs' liberty interests to be free from restraint and thus was subject to a strict scrutiny analysis. The district court applied the improper standard to consider an as-applied challenge when it determined there were two types of government action that could violate the class plaintiffs' substantive due process rights.
>
> Following the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), this court held to prevail on an as-applied due process claim, that the state defendants' actions violated the plaintiffs' substantive due process rights, the plaintiffs "must demonstrate *both* that the [state defendants'] conduct was conscience-shocking, *and* that the [state defendants] violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (emphasis in original) (quoting *Glucksberg*, 521 U.S. at 720-21, 117 S.Ct. 2258 (1997)). The district court, citing to a pre-*Lewis* decision of *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), used the former disjunctive standard and focused only on whether there was a fundamental right at issue, and having determined that there was a

> fundamental right at issue, the district court applied a strict scrutiny test to both the facial and as-applied challenges.
>
> > As indicated above, however, the court should determine both whether the state defendants' actions were conscience-shocking and if those actions violated a fundamental liberty interest. To determine if the actions were conscience-shocking, the district court should consider whether the state defendants' actions were "egregious or outrageous." See Montin v. Gibson, 718 F.3d 752, 755 (8th Cir. 2013) (quoting Burton v. Richmond, 370 F.3d 723, 729 (8th Cir. 2004)). To meet this high standard, we have explained that the alleged substantive due process violations must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Moran, 296 F.3d at 647 (quoting In re Scott Cnty. Master Docket, 672 F.Supp. 1152, 1166 (D. Minn. 1987)). Accordingly, the district court applied an incorrect standard in considering the class plaintiffs' as-applied substantive due process claims.
>
> Id. at 408. The Court of Appeals did not specifically address whether any of the grounds upon which the district court ruled in favor of the class plaintiffs involved the infringement of a protected liberty interest, but again noted the limited extent of the Supreme Court's decision in *Youngberg* before concluding there was no conscience-shocking conduct by Defendants:
>
> > [W]e have previously held that although "the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." See Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012) (alteration in original) (quoting Elizabeth M. v. Montenez, 458 F.3d 779, 788 (8th Cir. 2006)). Further, as the Supreme Court recognized, the Constitution does not prevent "a State from civilly detaining those for whom no treatment is available." [Kansas v. Hendricks, 521 U.S. 346, 366, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)]. Nevertheless, as discussed previously, to maintain an as-applied due process challenge, the class plaintiffs have the burden of showing the state actors' actions were conscience-shocking and violate a fundamental liberty interest. See Moran, 296 F.3d at 651.

> None of the six grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard. Having reviewed these grounds and the record on appeal, we conclude that the class plaintiffs have failed to demonstrate that any of the identified actions of the state defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard. Accordingly, we deny the claims of an as-applied due process violation.

*Id.* at 410–11.

Following remand after *Karsjens I*, the Eighth Circuit reviewed the district court's dismissal of the civilly committed sex offenders' remaining claims, including their claim of "constitutionally inadequate treatment." *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) ("*Karsjens II*"). The Eighth Circuit concluded that the district court properly dismissed this claim after applying the "shocks the conscience" standard, finding:

> this claim to be duplicative of the as-applied due process claim (Count 2) that we previously dismissed after applying the "shocks the conscience" standard. *See Karsjens I*, 845 F.3d at 410. Moreover, as we stated in *Karsjens I*, the Supreme Court has not recognized a "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." *Id*. (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).

*Karsjens II*, 988 F.3d at 1051.

The Eighth Circuit further addressed the "shocks the conscience" standard in *Van Orden v. Stringer*, 937 F.3d 1162 (8th Cir. 2019), *cert. denied sub nom. Orden v. Stringer*, 140 S. Ct. 1146 (2020), in which the Court reviewed a § 1983 class action brought by civilly committed sex offenders who claimed that the Missouri Sexually Violent Predator Act, as applied to them, violated their substantive due process rights. In affirming the district court's dismissal of the plaintiffs' claims on the basis that the challenged conduct was not conscience-shocking, the Court considered the plaintiffs'

argument that a "deliberate indifference" standard should apply rather than an "intent-to-harm" standard. The Court of Appeals did not resolve this issue, but simply held that the defendants' actions were not conscience-shocking under either standard. The Court stated:

> [T]he residents argue that the court in *Karsjens [I]* incorrectly applied an intent-to-harm standard for conscience-shocking conduct, and that "deliberate indifference" to liberty is the proper standard. *Karsjens [I]* is not entirely clear on this point. The issue was not raised in briefs before the *Karsjens [I]* panel because the plaintiffs disputed that the conscience-shocking standard applied at all. The *Karsjens [I]* opinion, *id*. at 408, did refer to conduct inspired by "malice or sadism" (language associated with intent to harm), but it also framed the issue as whether the defendants' actions were "egregious or outrageous," a phrase that aligns with the understanding that deliberate indifference involves "patently egregious" conduct. *See Lewis*, 523 U.S. at 850-51, 118 S.Ct. 1708.
>
> The residents submit that a deliberate indifference standard must apply here, because the defendant officials had sufficient time to reflect and deliberate about their actions. They point to the statement in *Lewis* that the deliberate indifference standard "is sensibly employed only when actual deliberation is practical." *Id*. at 851, 118 S.Ct. 1708. The State responds that decisions from other circuits have suggested that something more akin to an intent-to-harm standard may apply when officials, after deliberating, are forced to choose among competing, legitimate interests. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008); *Matican v. City of New York*, 524 F.3d 151, 158-59 (2d Cir. 2008); *Schieber v. City of Philadelphia*, 320 F.3d 409, 419-20 (3d Cir. 2003). The State suggests that the need for officials to balance the competing obligations of community safety and proper treatment makes the intent-to-harm standard appropriate here. We need not resolve the dispute over the applicable standard.
>
> We reject the residents' argument because the alleged actions of the defendant officials do not shock the conscience under either standard. There is no showing of malicious or sadistic intent to harm, and what was not "egregious" conduct in *Karsjens [I]*, 845 F.3d at 411, is not "patently egregious" deliberate indifference here. The director's alleged failure to authorize petitions for release does not amount to conscience-shocking deliberate indifference to liberty when a resident may petition a court directly for release and trigger the same type of proceeding on whether commitment is still justified. *See* Mo. Rev. Stat. §§ 632.498.2-.5, .501. The nonexistence of less restrictive housing options, the district court

16

> explained, stems largely from inadequate funding. Since at least 2010, state officials have "requested money to be placed in the state's budget for establishing cottages in the community, in order to implement the community reintegration phase," but the governor has not proposed that funding to the state legislature. Those efforts by state officials to secure funding run counter to a conclusion of deliberate indifference by the defendants. See Cullor v. Baldwin, 830 F.3d 830, 838-39 (8th Cir. 2016). The district court traced the problem of annual reviewers applying incorrect standards to a lack of legal training. This fault is hardly commendable, but it is insufficient to prove conscience-shocking deliberate indifference to a resident's liberty when the annual review is presented to a state court that is charged with reviewing the matter independently under correct legal standards. As in Karsjens [I], we conclude that the alleged shortcomings in the State's sexually violent offender program do not shock the conscience.

Id. at 1170.

Based on the foregoing, the Court finds no controlling authority which holds there is a fundamental right under the Constitution to receive sex offender specific treatment. See Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991) (holding that a dangerous psychopath, civilly committed for purposes of safekeeping, did not have a constitutional right to psychiatric treatment to overcome a "sexual offender condition"). But even assuming that such a right does exist, Plaintiff's Amended Complaint does not include any facts from which it might reasonably be inferred that his continued confinement at the NRC for inpatient treatment is the result of conscience-shocking conduct on the part of any Defendant, whether judged by the "deliberate indifference" standard or the "intent-to-harm" standard. Plaintiff does not claim that he is being denied all treatment as part of the NRC's Sex Offender Treatment Program but only that he is being denied a particular type of treatment, i.e. treatment for exhibitionistic behaviors. Indeed, Plaintiff alleges Defendants provide "sexually assaultive behavior treatments," Filing No. 8 at 5, and Plaintiff's June 2018 CTP Update identifies Plaintiff's primary problem as "Sexually

Assaultive Behavior," a long term goal for Plaintiff to "[g]ain an understanding of the pattern of thoughts, feelings, and behaviors which related to acting in a sexually deviant manner," and two short-term objectives with various therapeutic interventions aimed at helping Plaintiff achieve those objectives. Filing No. 15-2 at 9–12. Even liberally construed, Plaintiff's pleadings do not contain sufficient factual allegations to nudge his substantive due process claim across the line from conceivable to plausible, and his Amended Complaint is subject to preservice dismissal under 28 U.S.C. § 1915(e)(2).

## V. CONCLUSION

The Court finds that Plaintiff's Amended Complaint fails to state an actionable claim for relief under 42 U.S.C. § 1983. The Court, therefore, dismisses this matter without prejudice and without leave to amend, finding any amendment would be futile. See *Kriz v. Roy*, No. 8:20CV110, 2020 WL 6135442, at *8 (D. Neb. Oct. 19, 2020), *aff'd*, No. 20-3437, 2021 WL 2010333 (8th Cir. Jan. 28, 2021) (dismissing civilly committed plaintiff's amended complaint for failure to allege plausible substantive due process claim and concluding further amendment would be futile where precedent does not establish a constitutional right to receive mental health treatment in least restrictive environment).

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motions to Incorporate Filed Exhibits, Filing No. 9; Filing No. 10, are denied as moot.

2. Plaintiff's Motion for Voluntary Dismissal, Filing No. 18, seeking dismissal of Marsha Schwartz and Kim Ellenburger as defendants to this action, is granted, and neither individual is a party to this action.

18

3. The Clerk of the Court is directed to update the Court's records and add the following defendants to match the caption above: "Catherine Andela-Ruth, APRN"; "Rochelle Losing, APRN"; and Patricia True, LIMHP-CDC."

4. Plaintiff's action is dismissed without prejudice.

5. Judgment shall be entered by separate document.

Dated this 26th day of March, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge